CHARLES L. WEBB v. THE LEOMINSTER SHIRT COMPANY.

*Sale—Contract—Construction—Abuse of process—New trial.*

1. Where a judgment in favor of the plaintiff in an attachment suit against a non-resident defendant is reversed, and it appears that the plaintiff cannot recover under his declaration, and that jurisdiction was obtained by an abuse of the process of the court from which it issued, a new trial will not be ordered.

2. A clothing merchant received from a manufacturer of shirts a sample, with a quotation of the price per dozen at which the shirts could be furnished, and wrote the manufacturer, acknowledging the receipt of the sample, which he pronounced O. K., and, after referring to a list of sizes which he had previously sent to the manufacturer, directed it to make up 104 dozen of the shirts as soon as possible, to let him know at once how soon the order could be filled, to ship by fast freight, and to draw a sight draft on him at a designated bank in the city where he resided. Two days later the manufacturer wrote the merchant, acknowledging the receipt of the order, and stated that it had the scale of sizes referred to, and would at once go to work on the order, which would be ready to ship in 30 days, or as soon as the manufacturer could get it out. And it is held that the letters constituted a complete and perfect contract for the manufacture and shipment of the number of shirts ordered as soon as possible, and that the merchant had no legal right to cancel the arrangement without the consent of the manufacturer.

Error to Muskegon. (Dickerman, J.) Argued April 24, 1894. Decided June 16, 1894.

*Assumpsit.* Defendant brings error. Reversed, and no new trial ordered, and judgment entered for defendant for costs of both courts. The facts are stated in the opinion, and in the head-notes.

*W. E. Hoyt,* for appellant.

*Nelson DeLong,* for plaintiff.

HOOKER, J.   The plaintiff was a dealer in clothing at Muskegon, and defendant was a manufacturer of shirts at Leominster, Mass.   A contract was made by which the latter was to make and ship to the former 104 dozen shirts, like a sample provided, at $4.85 per dozen.   This contract was made by correspondence, and rests wholly in the letters and telegrams of the parties.   Plaintiff contends that by its terms the defendant undertook to ship the shirts on or before April 20.   The court left the construction of the contract to the jury, who found that such was the undertaking.   Defendant assigns error upon this, insisting that the court should have construed the contract, and directed a verdict for defendant.

Plaintiff's letter of March 11 ordered 104 dozen shirts as soon as possible, and asked how soon the order could be filled, as he wanted to know how to take orders.   Defendant's reply was dated March 13, saying that the order was received, that it would go to work upon the order at once, and be ready to ship in 30 days, or as soon as it could get the shirts out.   The same day (March 13), plaintiff telegraphed to defendant to "stop manufacture of shirts until you get letter," and on March 15 he wrote canceling his order for 104 dozen shirts, "on account of other business relations, for the present at least."   On March 16 he telegraphed to defendant to manufacture shirts as ordered.

The letters of March 11 and 13 constituted a complete and perfect contract for the manufacture and shipment of 104 dozen shirts as soon as possible.   The statement of defendant that it would ship in 30 days, or as soon as it could get them out, forbids the understanding that it agreed to ship within 30 days, or at any specified date.   The plaintiff had no legal right to cancel this arrangement without defendant's consent.   There is nothing to show that it did consent, and before the cancellation, which was,

by letter, reached the defendant, the plaintiff had again telegraphed to continue the manufacture of the shirts as ordered. He followed this by an apologetic letter of March 16, in which he gives as a reason for the telegram of March 13 and the letter of the 15th that Minneapolis parties had told him it would take from two to three months to fill an order for 104 dozen, and he could not wait that long, but, on receipt of letter that defendant would ship *within 30 days or less,* he was satisfied, and desired the goods as ordered. He added that he hoped defendant would accept this as final, and proceed. On the 19th the defendant wrote that it had received the telegram of the 16th, and would continue the manufacture of the shirts. On the 25th plaintiff wrote again, requesting defendant not to start on the shirts, if it had not done so, until it heard from him again, and on March 27 defendant wrote that it had countermanded the order for the shirts. On March 27 plaintiff telegraphed defendant to proceed with the shirts, and on the same day he wrote, saying that in his letter of March 25 he had asked defendant to wait with the shirts, as he had a matter of great importance to look after, but, as "those matters" had been disposed of, he could devote his whole time to the shirts, and that, had he known that they could have been disposed of so readily, he would not have written that letter. He adds:

"Now, all that I would like to understand is when to look for the three dozen for samples; also, when to expect the 104 dozen. * * * To give you an idea of the disposition I make of the shirts, I will say that I have men out selling them at retail direct. * * * As soon as you fill this order, I will place another order for 100 or 200 dozen more, as I shall handle from 800 to 1,000 dozen every year."

This letter does not seem to have been answered. It was followed two days later by a telegram, as follows:

" Will you allow my order to stand as original?   Will place bonus of $100 with any bank to assure good faith. Wire me at once.   Rush.

" C. L. WEBB."

The answer was:

" Deposit $100 Lumberman's Bank as bonus.   Have cashier send memorandum.   Order put in process."

A careful perusal of the various letters and telegrams referred to satisfies us that:

1. The original contract, as stated, was to ship as soon as the shirts could reasonably be made.

2. The manufacture was deferred upon the several requests of the plaintiff.

3. The attempted cancellation was countermanded by wire before it could have reached defendant.

4. If it had not been countermanded, there is nothing to show that the defendant consented to waive its contract rights.   The statement in its letter of March 27, 1893, that defendant had countermanded the order for the shirts, was in answer to a request to postpone their manufacture, and signified only that it had countermanded the order for their manufacture, not that it treated the contract as countermanded,—a thing plaintiff was not asking.

5. Plaintiff's letter of March 27 in no way limited or affected defendant's rights under the contract then in existence, as he evidently understood by his telegram, asking defendant to let his order stand as original.

The defendant's contract, as originally made, never was waived or changed by its consent.   There was no agreement that the shirts should be delivered as stated in either count of the declaration, and the court should have directed a verdict for the defendant.

The plaintiff unblushingly admits that he resorted to artifice to obtain jurisdiction of the defendant, and the correspondence provokes a strong suspicion that he designed

from the first to trap the defendant into a position where he could make a claim for damages for non-delivery.

As the plaintiff cannot recover under his declaration, and jurisdiction was obtained under what we consider an abuse of the process of the court, we think there should be no new trial ordered. The defendant will take judgment in this Court for its costs of both courts.

LONG, GRANT, and MONTGOMERY, JJ., concurred. MC-GRATH, C. J., did not sit.